Stueve, J.
Plearcl on demurrers to answers and cross-petitions.
On July 7, 1904, Deborah Binkley was duly appointed and qualified administratrix of the estate of Daniel Binkley, deceased, and on the 24th day of August, 1904, filed her petition as such administratrix against William F. Binkley et al, heirs at law of'the said Daniel Binkley, deceased, who died intestate, for the purpose of obtaining an order of the probate court for the sale of 104 acres of land, of which the said decedent died seized. The petition is in the usual form and of itself throws no light on the subject tó be treated by this court.
On the same day Deborah Binkley, who is also the widow of said Daniel Binkley, deceased, came into court and filed her separate answer and cross-petition to the petition in said case, stating in substance: That she is the widow of said Daniel Binkley, deceased;.and as such is entitled to dower in the whole of the premises described in said petition; that as such widow she Composes a part of decedent’s family; that she is still his widow and unmarried, and that at the time of his death she, with her déceased husband, resided on the first tract, comprising forty-one acres, described in the petition, and were using and occupying the same as their family homestead; that she *34 is still residing thereon and using and occupying the same, and that'she is entitled to a homestead as such widow in said first 1ract, under the laws of the state of Ohio.
She, in her said separate answer and cross-petition, prays the court that her dower may be duly assigned and set off to her in the whole of said premises, and also that a homestead may be duly assigned and set off to her by the appraisers in the first tract described in said petition, as provided by law, and for all other relief to which she may be entitled.
Summons were duly issued, served, returns made, and Sidney Sprague was during the interim appointed as guardian ad litem of Sadie B. Whetstone and five other minor defendants in said cause, and on the 24th day of September said Sidney Sprague, as such guardian ad litem, filed his separate answers and cross-petition in said cause, setting forth—
1st. That he, as such guardian ad litem, after the usual denials, says, as and for his second defense to the petition of said administratrix and the answer and cross-petition of Deborah Binkley, widow, that said Deborah Binkley, as such widow, is not entitled to dower in the whole of the premises described in plaintiff’s petition and to a homestead in the first tract described in said petition, or in any of the premises of which the said Daniel Binkley died seized. He further avers that on the llth day of February, 1879, in contemplation of ’a marriage entered into on said day by Daniel Binkley and Deborah Binkley, nee Deborah Bodkin, widow of' said decedent, a contract was entered into by and between them, in consideration whereof the sum of two hundred dollars ($200) was to be paid to the said Deborah Bodkin, now Binkley, at the death of the said Daniel Binkley, deceased. He further says that by the terms of said contract the said Deborah Bodkin, now Binkley, released all dower or expectancy of dower and all her rights to a homestead, and all of her interest, general or special, whether of dower or otherwise, in and to any real estate of which the said Daniel Binkley was seized at the time of making said contract, or that he afterwards acquired, or of which he was seized at the time of his death, and that said contract *35 was duly executed, filed for record and recorded in the book of contracts in the office of the recorder of Auglaize county. On said 24th day of September, 1904, Win. Binkley and seven other defendants, all adults, heirs at law of said Daniel Binkley, filed their separate answers and cross-petitions to plaintiff’s petition, and to’ the separate answer and cross-petition of said Deborah Binkley, widow, setting up substantially the same facts as set up in the separate answer of Sidney Sprague, guardian ad litem of said minor heirs. Each of said separate answers and cross-petitions of the defendants (not including the widow’s) attached a copy under Exhibit “A” of the alleged contract entered into by and between Daniel Binkley and Deborah Bodkin on said 11th day of February, 1879.
To these separate answers and cross-petitions of' the said defendants, said guardian ad litem and William F. Binkley and others, said Deborah Binkley, as administratrix, plaintiff, and as widow, filed demurrers to the second defense of said answers and cross-petitions, on the ground that said second defense in each of said pleadings is insufficient in law.
These demurrers were filed on November 12, 1904. The question now comes up on these demurrers. On November 29, 1904, 'counsel for the respective parties argued the said demurrers at a considerable length, and respectively cited numerous authorities.
I take it that the only question for me to determine is as to whether or not these separate answers and cross-petitions of Sidney Sprague, guardian -ad litem, and William F. Binkley et al, defendants, are sufficient in'law. I have gone to the trouble to examine-the authorities presented to me and also some others that I thought might have some bearing in the cage, but I find very little in addition to wh-at has been cited for the purpose of determining the question before the court, outside of the authorities cited by counsel on either side.
In examining these authorities the trend of all -of them is to the effect that each case presented to the court when the validity of a marriage contract or marriage settlement or jointure is drawn into question must be determined by itself. But *36 the general trend of all authorities that I have examined is to the effect that such 'agreements must be entered into in good faith, with the full knowledge of their consequences, and must be reasonable and fair in making a provision for the wife in the event of the husband’s prior death, otherwise courts of equity will not permit them to be set up as defenses against the claim of the widow for dower or other statutory allowances.
In this particular case at bar, considerable stress is laid on the’fact that because these separate answers of the heirs at law do not make any averment or averments that the contract between the widow and her deceased husband was fair; that no advantage had been taken of the bride; that the amount fixed in said contract to be paid to the widow at the death of her husband was a reasonable provision for such widow, and that simply a statement of the naked contract in the pleadings is not sufficient, and that, therefore the demurrers should be sustained.
My idea of the ease is that the demurrers should be sustained, and I feel that I am borne out in this by the decision of the Supreme Court in the case of John Garver, Executor of John Miller, deceased, v. Sarah Miller, and I cite counsel to that decision of the Supreme Court, found in Yol. 16, O. S. Reports, at page 532, upon which language of the court I feel satisfied I am not able to improve.
Judge Brinkerhoif, in determining that question, says (in language which I feel is decisive of this case):
“But, in respect to' contracts of this, and of a kindred kind, equity is properly somewhat jealous of the influence which it is commonly in the power of the husband to exert in their procurement, however that influence may arise—whether from her lingering fondness and habitual deference, the restraint of his presence, his superior knowledge of business and values, or his powers of coercion -and annoyance. Hence it is an essential element of the proposition above stated, that the terms of the contract in favor of the wife shall be fair, reasonable and just to her, in view of all the circumstances of the case and of the parties at the time the contract is made. If the contract be relied on in pleading, either as a cause of action or as a matter in defense, the pleading must contain averments which show *37 the contract to have been fair, reasonable and just to her under the then existing circumstances. If it become a question of fact, the proof must lead ‘the mind of the chancellor satisfactorily to the same conclusion. It is not sufficient, either as a matter of pleading or of proof, to set up the naked contract and its execution by the husband. In addition to this, facts must be averred, or proved, or both, as the exigencies of the case may require, showing that the terms of the contract in favor of the wife were fair, reasonable and equitable, under the circumstances of the parties at the time it ivas made. And this doctrine runs through all the cases bearing on the subject.
“Tried by these principles, the second defense set up in the defendant’s answer is defective as a complete bar to the plaintiff’s action,ms set forth in her petition; for it sets up the naked contract between the husband and wife, and its execution on the part of the husband, unaccompanied by averments showing the fairness, reasonableness and equitable character of its provisions in her favor, in view of all the circumstances of the case. In so far, then, as the said second defense was set up as a complete bar to the plaintiff’s petition, we are of the opinion that there was no error in the court below in sustaining the demurrer thereto.”
As stated before, all contracts of this kind must be fair, just and reasonable. I desire to call attention to the case of William H. Grogan, by his guardian, v. Emma G. Garrison, by her next friend, 27 O. S., at page 50. On page 58 of the opinion Judge Johnson, for the court, says:
‘ ‘ There is no statement of facts showing the extent and value of William Grogan’s property at the date of the marriage, nor. of the value of the property conveyed, nor of that remaining, to enable the court to say whether it was adequate or not.
“There is no averment that the deed was ever delivered to her, or that she, either during or after coverture, ever had possession; on the contrary, the court finds, as one of the reasons doubtless for sustaining the demurrer, that the premises are in the possession of the defendant; and still more, that, by proceedings in the probate court, instituted, as they must have been, by the defendants, or one of them, the property had been sold and converted into money.
“We mention this as accounting for the absence of such important averments in this defense.”
This ease, although not absolutely decisive of the proposition, refers to the fact that certain particular allegations must *38 be made in a defense of such a claim in order to entitle the defendant to have any standing in .court, and further on, on page 64 of that decision, the court says, “Each ease must be determined on its own particular facts and equities.” In that case the widow received a conveyance for less than one-tenth of the real estate. No value was stated; it was only for life, in less than one-third of the whole; nothing was ever done to put her in possession; no acceptance by her, or part performance, and no facts stated to show that it was fair, reasonable or just to her.
Judge Johnson proceeds further and says:
“It has been an axiom, accepted for ages, that dower was to be favored; that no widow should be barred of that ancient and cherished right, unless—
“1st. There has been settled upon her, in strict conformity to law, an estate, as jointure, possessing all those requisites already pointed out; or,
“2d. There was such adequate provisions made, in lieu of dower, as, under' all the circumstances, was fair, reasonable, and just. ’ ’
In the case of Mintier v. Mintier, in the 28 O. S., at page 312, Chief Justice Scott, in the very first paragraph of his opinion, presents a number of “ifs” or conditions which must exist in order to make the marriage settlement a bar to a claim for dower and other statutory allowances.
ITe says:
“If the ante-nuptial agreement in this case was intended by the parties to operate as an equitable jointure, and as such to bar all claims of the wife to dower in the real estate of the husband; if the parties were of mature age, and capable of judging in respect to their interests; if the agreement was fairly entered into in good faith, and without any fraud or imposi■tion; if it was reasonable in its terms, and was in good faith acted upon and carried into effect by Robert Mintier during his life, no good reasons are perceived why the full effects should not be given to it, according to the intention of the parties.”
Even 'as far back in the history of the state as 1846, Chief Justice Wood, in the case of Stilley v. Folger, refers to the fact *39 that the dower agreements must be fair and reasonable, and on page 647 of the 14th Ohio Reports in said ease uses this language:
“In the opinion of this court, such agreements must be entered into lona fide, with a full knowledge of their consequences, and, under the circumstances, make reasonable provisions for the wife, or courts of equity ought liit to- permit them to be set up as equitable estoppels.”
And the circuit court in the case of Johnson v. Johnson, 1 C. C., 521, in a contract which is a good deal like the one in question' in our case without any particular reasoning, as far as said' report shows, says, that the answer is insufficient and that the court of common pleas did not err in sustaining the demurrer to it. In that case, there are no allegations in the answer that the agreement made between James B. Johnson and Anna Hammond, the widow, w-as just,. fair and reasonable to-the widow, and I conclude that the court holds that the answer so set up is demurrable because of the want of such allegations.
Now, in the case at bar, the separate answer of the guardian ad litem and William F. Binkley and 'Other heirs simply recite the fact that Deborah Bodkin, now Binkley, entered into such contract, and they simply state or aver in their pleadings that she released all dower or expectancy of dower and all the rights to a homestead and of. all her interests,- general or special, whether -of dower or otherwise, in and to any real estate of which .the said Daniel Binldey was seized at the time of making said contract or that he afterward acquired or of which he was seized at his death.
There is not a single word of explanation that that contract was fair to the widow; that she knew what she was doing at the time; that she knew what the condition of her husband’s property was; that she knew that he owned 104 acres; that she knew that he owned- one acre of land, or that she knew that he was ar man capable of acquiring property; that it was just and reasonable in making provisions for* the widow in the event that she should survive him.
Layton c& Son, for plaintiff.
Sprague & Lippincott, for defendants.
Of course, there is no testimony offered (never is on a demurrer), but the demurrers search the pleadings. In this case the pleadings state that Mr. Binkley died seized of one hundred and four acres of land, and about ninety dollars worth of personal property,, and that his debts at the time of filing said petition, as near as they could be ascertained, amounted to about $609,
It strikes me from the statements or avercnents contained in the pleadings before this court that Mr. Binkley’s estate would amount to perhaps, after the payment of debts and costs of administration, in the neighborhood of $4,500 or $5,000, and that such a sum as is stated in this marriage contract ($200) to be paid to the widow in lieu of all claims, as the heirs now contend, is in the judgment of this court not fair, not just, and to say the least, is an unreasonable allowance from which to support herself.
A number of other cases are cited, but for this question are not necessary to be referred to.
Hence, in my judgment, as stated before, the demurrers to these answers and. cross-petitions of the heirs of the decedent will be sustained.
An order or orders will be entered accordingly.